**Sabrina YOUNG and Lorenzo Young, wife and husband, Plaintiffs,**

v.

**ALLSTATE INSURANCE COMPANY, a foreign corporation, Defendant.**

**No. CV–00–1607–PHX–JAT.**

United States District Court, D. Arizona.

July 9, 2003.

Gynn W. Gilcrease, Jr., Law Offices of Gynn W. Gilcrease, Jr., Richard Anthony Dillenburg, Richard A. Dillenburg PC, Tempe, AZ, for Plaintiffs.

Floyd P. Bienstock, Karl Michael Tilleman, Jeffrey W. Nunes, Steptoe & Johnson LLP, Phoenix, AZ, for Defendant.

Calvin C. Thur, Thur & O'Sullivan PC, Scottsdale, AZ, Eugene R. Anderson, Anderson Kill & Olick PC, New York City, for Intervenor–Plaintiff.

### ORDER

TEILBORG, District Judge.

Pending before the Court are two dispositive motions: (1) Plaintiffs' Motion for Partial Summary Judgment Re: Bad Faith (Doc. # 93); and (2) Defendant's Cross–Motion for Summary Judgment (Doc. # 144). For the reasons set forth below, the Court will deny Plaintiffs' Motion and grant Defendant's Motion in part.

### Background

Plaintiffs Sabrina Young and Lorenzo Young purchased an automobile insurance policy from Defendant Allstate Insurance Company that included uninsured motorist ("UM") coverage. While insured under the policy, Ms. Young was involved in an automobile accident with an uninsured motorist, Brian Beystrum, on February 11, 1999. Ms. Young was stopped at a traffic signal when Mr. Beystrum hit the back of Ms. Young's Isuzu Rodeo with his Volkswagen Rabbit.[1] They did not call the police or any emergency services at the scene of the accident and did not go to the emergency room or seek medical attention immediately.

Ms. Young notified Defendant of the accident and informed it that she intended to see a doctor. Four days after the accident, Ms. Young sought medical attention for the first time and was prescribed muscle relaxers and anti-inflammatories. Over the next two and a half months, Ms. Young received medical treatment from three doctors and two physical therapists for injuries allegedly suffered in the accident. Defendant offered to have Ms. Young undergo an independent medical examination, but she did not have one.

Defendant contacted both individuals shortly after being notified of the claim and discussed the accident with them in separate telephonic interviews.[2] Defendant also inspected and took photographs of Ms. Young's vehicle and prepared an inspection report.[3] Defendant arranged for an inspection of Mr. Beystrum's vehicle, but an inspection never occurred before Mr. Beystrum sold the vehicle.

In mid-July 1999, Defendant offered Ms. Young $4,683.48 after evaluating her claim.[4] Ms. Young rejected the offer and hired an attorney, Diane Landrith, who filed a complaint in state court on July 30, 1999 seeking contract and bad faith tort

---

1. Although not material, Ms. Young was unsure whether Mr. Beystrum's vehicle was a Toyota or a Volkswagen. (Pls.' Rebuttal to SOF ¶ 2) (Doc. # 156).

2. Mr. Beystrum's interview was not recorded.

3. Plaintiffs had a $500.00 property damage deductible in their policy and did not submit a property damage claim to Defendant.

4. The parties dispute whether this offer included all of the medical bills and lost wages or an amount for general damages.

damages. The lawsuit was dismissed without prejudice because the parties' policy provided for binding arbitration.

The parties agreed to arbitration and conducted limited discovery. Prior to arbitration, Ms. Landrith demanded the policy limit of $25,000.00 but reduced this amount to $20,000.00. Defendant increased its offer to $5,300.00, but Ms. Landrith did not communicate the offer to Ms. Young. Pursuant to the policy, the parties proceeded to arbitration where Ms. Young was awarded $9,000.00. The parties then agreed upon an appropriate release and Defendant paid the award. Plaintiffs then filed this bad faith action.

### Discussion

## I. LEGAL STANDARDS

### A. Summary Judgment Legal Standard

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Jesinger v. Nev. Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); see Jesinger, 24 F.3d at 1130. In addition, the dispute must be genuine, that is, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S.Ct. 2505. Finally, district courts in the Ninth Circuit must consider even inadmissible evidence at the summary judgment stage unless a party has moved to strike the evidence or has otherwise objected to it. See Pfingston v. Ronan Eng'g Co. 284 F.3d 999, 1003 (9th Cir.2002); Scharf v. U.S. Attorney Gen., 597 F.2d 1240, 1243 (9th Cir.1979).

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." Celotex, 477 U.S. at 323–24, 106 S.Ct. 2548. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322, 106 S.Ct. 2548; see Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir.1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial. Celotex, 477 U.S. at 323, 106 S.Ct. 2548. Furthermore, the party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir.1995); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.1989); see also Rule 1.10(l)(1), Rules of Practice of the United States District Court for the District of Arizona ("Any party opposing a motion for summary judgment must ... set[ ] forth the specific facts, which the opposing party asserts, including those facts which establish a genuine issue of material fact precluding summary judgment in favor of the moving party.").

There is no issue for trial unless there is sufficient evidence favoring the nonmoving party; if the evidence is merely colorable or is not significantly probative, summary

judgment may be granted. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505. However, because "[c]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are jury functions, not those of a judge, ... [t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor" at the summary judgment stage. *Id.* at 255, 106 S.Ct. 2505 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)); *see Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.1995); *Sec. & Exch. Comm'n v. Koracorp Indus., Inc.*, 575 F.2d 692, 698 (9th Cir.1978) (reversing summary judgment and stating that "[t]he courts have long recognized that summary judgment is singularly inappropriate where credibility is at issue"). Finally, summary judgment is not appropriate if a party's knowledge or state of mind is at issue because the resolution of such issues is a jury function. *See Braxton–Secret v. A. H. Robins Co.*, 769 F.2d 528, 531 (9th Cir.1985) (reversing summary judgment and stating that "[q]uestions involving a person's state of mind, e.g., whether a party knew or should have known of a particular condition, are generally factual issues inappropriate for resolution by summary judgment"); *Mendocino Env't Ctr. v. Mendocino County*, 192 F.3d 1283, 1302 (9th Cir.1999) (reversing summary judgment and quoting *Braxton–Secret); Consol. Elec. Co. v. United States*, 355 F.2d 437, 438 (9th Cir.1966) (reversing summary judgment and stating that "[w]hen an issue requires determination of state of mind, it is unusual that disposition may be made by summary judgment").

### B. Substantive Legal Standard: Bad Faith Under Arizona Law

In Arizona, insurance contracts include an implied covenant of good faith and fair dealing that requires the parties to refrain from any conduct that would impair the benefits or rights expected from the contractual relationship. *See Rawlings v. Apodaca*, 151 Ariz. 149, 726 P.2d 565, 570 (1986). To establish bad faith on the part of the insurer, " 'a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim.' " *Deese v. State Farm Mut. Auto. Ins. Co.*, 172 Ariz. 504, 838 P.2d 1265, 1267–68 (1992) (quoting *Noble v. Nat'l Life Ins. Co.*, 128 Ariz. 188, 624 P.2d 866, 868 (1981)). The first inquiry involves an objective analysis that focuses on whether the insurer acted unreasonably, while the second involves a subjective analysis as to "whether the insurer *knew* that its conduct was unreasonable or acted with such reckless disregard that such knowledge could be imputed to it." *Id.* at 507, 838 P.2d 1265 (emphasis in original).

In March 2000, an *en banc* panel of the Arizona Supreme Court clarified Arizona law regarding first-party bad faith insurance tort claims in *Zilisch v. State Farm Mutual Automobile Insurance Co.*, 196 Ariz. 234, 995 P.2d 276 (2000). The Supreme Court granted review of the court of appeals' decision and issued its opinion in part "to sort out the relationships among (1) the absence of a reasonable basis for denying a claim, (2) fair debatability, (3) who gets to decide (judge or jury), and (4) evidence of improper claims practices." *Zilisch*, 995 P.2d 276. In addition, the Supreme Court was troubled by the court of appeals' holding "that as long as the amount the insurer ultimately offers to its insurers is fairly debatable, nothing else it does in investigating the claim, evaluating the claim, and paying the claim really matters." *Id.* at 279 (noting that such holding raised serious question under Supreme Court's opinion in *Deese*, 172 Ariz. 504, 838 P.2d 1265). The Supreme Court stated that "[w]hile it is clear that an insurer may defend a fairly debatable

claim, all that means is that it may not defend one that is not fairly debatable." *Id.* at 279. In vacating the court of appeals' decision, the Supreme Court clarified that "in defending a fairly debatable claim, an insurer must exercise reasonable care and good faith." *Id.*

The Supreme Court set forth the "basic rules" as follows: "The tort of bad faith arises when the insurer 'intentionally denies, fails to process or pay a claim without a reasonable basis.'" *Id.* at 279 (quoting *Noble,* 624 P.2d at 868). "[C]oming up with an amount that is within the range of possibility is not an absolute defense to a bad faith case." *Id.* at 280. This is so because an insurer "has an obligation to immediately conduct an adequate investigation, act reasonably in evaluating the claim, and act promptly in paying a legitimate claim. It should do nothing that jeopardizes the insured's security under the policy. It should not force an insured to go through needless adversarial hoops to achieve its rights under the policy. It cannot lowball claims or delay claims hoping that the insured will settle for less." *Id.*

 Put another way, "while fair debatability is a necessary condition to avoid a claim of bad faith, it is not always a sufficient condition. The appropriate inquiry is whether there is sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." *Id.* at 280 (citing *Noble,* 624 P.2d at 868; *Deese,* 838 P.2d at 1268).

 Generally, "[w]hile an insurer may challenge claims which are fairly debatable, ... its belief in fair debatability 'is a question of fact to be determined by the jury.'" *Id.* at 279 (quoting *Sparks v. Rep. Nat'l Life Ins. Co.,* 132 Ariz. 529, 647 P.2d 1127, 1137 (1982)). If the plaintiff offers

no significantly probative evidence that calls into question the defendant's belief in fair debatability, however, the court may rule on the issue as matter of law. *See Knoell v. Metro. Life Ins. Co.,* 163 F.Supp.2d 1072, 1077 (D.Ariz.2001) ("[B]ecause there are no questions of fact to present to a jury about whether the insurance company really believed it should investigate the claim verses just using the investigation as a pretext to avoid payment, this Court concludes that the Defendant did not act in bad faith by investigating the claim.").

## II. ANALYSIS

### A. Plaintiffs' Motion for Partial Summary Judgment Re: Bad Faith

In its Motion for Partial Summary Judgment, Plaintiffs argue that Defendant breached its implied covenant of good faith and fair dealing *as a matter of law* by the following acts and omissions: (1) unconditionally failing to pay the *undisputed amount* of the claim to which Plaintiffs were legally entitled under the policy; (2) failing to pay *full benefits* to which Plaintiffs were legally entitled, i.e., general damages; (3) failing to conduct a *reasonable investigation* and extend *equal consideration* before making substantive decisions affecting Plaintiffs' rights under the policy; and (4) forcing Plaintiffs through *needless adversarial hoops* to obtain policy benefits. (Mot. at 1).

### 1. Defendant's alleged unconditional failure to pay undisputed amount

 Plaintiffs argue that Defendant determined that (1) $4,407.45 of Ms. Young's medical bills were reasonable and necessary, and (2) she was legally entitled to $276.03 in lost wages. (*Id.* at 8). Thus, Plaintiffs contend that Defendant should have paid Plaintiffs the "undisputed amount" of $4,683.48 without the condition

of a general release because "[w]hen there is no dispute as to liability or the existence of coverage but only to the amount of the loss, the carrier must promptly pay the undisputed amount of the claim." (*Id.* at 8–9) (citing *Borland v. Safeco Ins. Co. of Am.*, 147 Ariz. 195, 709 P.2d 552 (1985); *Filasky v. Preferred Risk Mut. Ins. Co.*, 152 Ariz. 591, 734 P.2d 76 (1987)).

In *Voland v. Farmers Insurance Co. of Arizona*, 189 Ariz. 448, 943 P.2d 808, 812 (1997), however, the court held that *Borland* and *Filasky* were *not* controlling precedent and did *not* preclude summary judgment for the carriers because the cases did not involve UM claims for personal injury. The court stated that "[i]f, in order to avoid a bad faith claim, UM carriers were obligated to pay the amount of their lowest settlement offer without obtaining any release and before any arbitration hearing or award, they would have little if any incentive to settle." *Id.* Noting that "a personal injury claim is unique and generally not divisible or susceptible to relatively precise evaluation or calculation[,]" the court held that "the carriers' failure to pay plaintiff her special damages before arbitration would not constitute bad faith" in part because plaintiff never demanded the carriers to pay her undisputed special damages before arbitration. *Id.* at 812–13. The court also noted that "the insurance policies did not require the carriers to offer or make advance payments of UM benefits, for allegedly "undisputed" damages or otherwise, but rather specifically provided for binding arbitration of disputed UM claims." *Id.* at 814. Thus, the court affirmed summary judgment for the carriers because "any obligation the carriers had to gratuitously pay plaintiff

UM benefits in advance for her special damages was, as a matter of law, 'fairly debatable.'" *Voland*, 943 P.2d at 814; *see Daly v. Royal Ins. Co. of Am.*, No. Civ. 00–40–PHX–SRB, 2002 WL 1768887, at *11–12 (D.Ariz. July 17, 2002) (relying on *Voland* and granting summary judgment for defendant in part because plaintiffs "failed to present evidence showing that a truly undisputed minimum amount of . . . loss had developed").

Here, Plaintiffs have presented no evidence that they specifically demanded Defendant to pay the alleged "undisputed" special damages. Moreover, "[i]n light of the acknowledged challenges surrounding the valuation of claims for personal injury,[5] the [C]ourt finds that the decisions in *Borland* and *Filasky* are not controlling" and that Plaintiffs are not "entitled to summary judgment regarding [Defendant's] alleged failure to advance undisputed damages." *Daly*, 2002 WL 1768887, at *12; *see Voland*, 943 P.2d at 813–14.

### 2. Defendant's alleged failure to offer general damages

Plaintiffs argue that they were "legally entitled" to receive general damages as policy benefits because Ms. Young incurred "reasonable and necessary" medical expenses. (Mot. at 9–10) (citing *Anderson v. Muniz*, 21 Ariz.App. 25, 515 P.2d 52 (1973); *Bustamante v. City of Tucson*, 145 Ariz. 365, 701 P.2d 861 (1985)).[6] Plaintiffs argue that Defendant's initial offer of $4,683.48 consisted of *only* Ms. Young's $4407.45 in medical bills and $276.03 in lost earnings and included *nothing* for general damages. (Mot. at 4; Pls.' SOF ¶¶ 25–29).

In its Response, Defendant states that the undisputed testimony of the adjusters

---

**5.** In its Reply, Plaintiffs acknowledge that "bodily injury claims are harder to quantify than property damage claims[.]" (Reply at 5).

**6.** In its Reply, Plaintiffs contend that *Anderson* and *Bustamante* hold that "an award of medical bills *implicitly* requires an award of pain and suffering." (Reply at 7) (emphasis added).

and evaluator of Ms. Young's claim explains that Defendant's offer to settle the claim *included* general damages, though the amounts vary. (Resp. at 24; Def.'s SOF ¶¶ 20–23, 43).[7] Defendant further states that "if the offer did not include general damages because of a miscalculation of Ms. Young's medical bills, [P]laintiffs do not have a shred of evidence that [Defendant's] error was something other than an honest mistake[.]" (Resp. at 19).

Based on the conflict between the testimony of the adjusters and evaluator that Defendant's offer included general damages and several claim file documents that seem to indicate that no general damages were offered, the Court finds that a genuine issue of material fact exists as to whether Defendant offered general damages. (*See* Def.'s SOF ¶¶ 20–23, 43; Pls.' SOF ¶¶ 25, 27–29); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are jury functions, not those of a judge[.]"); *Sec. & Exch. Comm'n v. Koracorp Indus., Inc.,* 575 F.2d 692, 698 (9th Cir.1978) (stating that "[t]he courts have long recognized that summary judgment is singularly inappropriate where credibility is at issue"); *Braxton–Secret v. A. H. Robins Co.,* 769 F.2d 528, 531 (9th Cir.1985) (stating that "[q]uestions involving a person's state of mind … are generally factual issues inappropriate for resolution by summary judgment").

In addition, the Court finds that Plaintiffs have not demonstrated that they are entitled to judgment *as a matter of law. See Celotex Corp. v. Catrett,* 477 U.S. 317,

322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505 (1986); *Jesinger v. Nev. Fed. Credit Union,* 24 F.3d 1127, 1130 (9th Cir. 1994). The cases Plaintiffs rely on did *not* involve bad·faith tort claims and merely held that *juries* must award damages to which plaintiffs are legally entitled *as shown by the evidence. See Anderson v. Muniz,* 21 Ariz.App. 25, 515 P.2d 52, 55 (1973); *Bustamante v. City of Tucson,* 145 Ariz. 365, 701 P.2d 861, 863 (1985). Significantly, the cases do *not* stand for the proposition that insurance companies are liable for bad faith *as a matter of law* if they do not include general damages in all offers to settle UM personal injury claims. *See id.*

Accordingly, the Court will deny Plaintiffs' Partial Motion for Summary Judgment with respect to its argument that Defendant is liable for bad faith as a matter of a law because it failed to offer general damages.

### 3. Defendant's alleged failure to conduct a reasonable investigation and extend equal consideration

■ Plaintiffs contend that· Defendant: (1) "constantly bombarded Sabrina Young with the allegation that this was a 'minor impact' with the *implication* of no injury"; (2) "not only failed to conduct a reasonable investigation, it failed to conduct an investigation at all"; and (3) "wrote a letter to the uninsured motorist and *suggested* that its own insured could not have been injured and sought to enlist the third party against its insured by the threat of subrogation." (Mot. at 12) (emphasis added).[8]

In its Response, Defendant argues that it did investigate Ms. Young's claim and

---

7. Plaintiffs acknowledge such testimony and the appearance of an issue of fact but contend that, given the contradictions in the testimony regarding the amount of general damages allegedly offered, "no jury could reasonably

conclude that a general damages offer had been made[.]" (Mot. at 5, n. 1). The Court disagrees.

8. The Court notes that the letter to the third party seems to undermine Plaintiffs' conten-

that such investigation was reasonable. (Resp. at 25–26).[9] Defendant offers evidence that it: (1) promptly interviewed both drivers after being notified of the accident; (2) immediately arranged for the inspection of both vehicles; (3) examined and took photographs of Ms. Young's vehicle; (4) estimated the extent and type of damage to the vehicle; (5) prepared an inspection report; (6) requested medical records from every doctor and physical therapist that Ms. Young visited; (7) utilized a valid system, MBRS, to evaluate Ms. Young's medical bills; (8) offered to have Ms. Young undergo an independent medical examination; and (9) determined the "reasonable and necessary" medical expenses that Ms. Young incurred within two weeks after receiving all of her medical bills. (Resp. at 3–6, 25; Def.'s SOF ¶¶ 7–8, 10, 16–20).

Viewing the evidence in the light most favorable to Defendant, the Court cannot rule *as a matter of law* that Defendant failed to conduct a reasonable investigation or extend equal consideration to Plaintiffs. *See Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Jesinger,* 24 F.3d at 1130. Accordingly, the Court will deny Plaintiffs' Partial Motion for Summary Judgment with respect to its argument that Defendant is liable for bad faith as a matter of a law because it failed to conduct a reasonable investigation and extend equal consideration to Plaintiffs.

### 4. Defendant's alleged efforts to force Plaintiffs through "needless adversarial hoops" to obtain policy benefits

█ Plaintiffs contend that Defendant "took a hard stand, stating its 'offer is max,' forcing [Plaintiffs] through needless adversarial hoops in order to obtain benefits under the policy." (Mot. at 12). Specifically, Plaintiffs contend that Defendant forced Ms. Young to: (1) hire an attorney; (2) pay for arbitrators; (3) attend a deposition; and (4) arbitrate her claim. (*Id.*). Based on the $9,000.00 arbitration award, which is "nearly twice [Defendant's] 'final voluntary offer[,]'" Plaintiffs contend that Defendant committed bad faith *as a matter of law.* (*Id.*) (citing *Zilisch* ).[10]

Ms. Young, however, initially believed that she was entitled to the *policy limit* of $25,000.00. (Def.'s SOF ¶ 25). After Defendant offered Ms. Young nearly $4,700.00, she hired Ms. Landrith and demanded $25,000.00. (*Id.* ¶ 32). When the demand was reduced to $20,000.00, Defendant responded with a $5,300.00 offer but Ms. Landrith did not communicate the offer to Ms. Young. (*Id.*).[11] Thus, the even-

---

tion that Defendant "failed to conduct an investigation at all."

**9.** Defendant also notes that, "as a matter of law, 'an insurance company's failure to adequately investigate only becomes material when a further investigation would have disclosed relevant facts.'" (*Id.*) (citing *Aetna Cas. & Sur. Co. v. Superior Ct. (Gordinier),* 161 Ariz. 437, 778 P.2d 1333, 1336 (1989)). Defendant argues that Plaintiffs "have not presented any facts that 'could have been determined by any further investigation' that would have changed the outcome of Ms. Young's claim" and that "[w]ithout such facts, summary judgment in [Defendant's] fa-

vor cannot be averted." (*Id.* at 26). The Court will address this argument below with respect to Defendant's Cross–Motion for Summary Judgment.

**10.** Although Plaintiffs set forth the rule in *Zilisch* regarding "needless adversarial hoops," they fail to show how–*in this case* – hiring an attorney and preparing for and participating in an arbitration pursuant to their policy constitute such "hoops" under *Zilisch.*

**11.** Plaintiffs state that the $25,000.00 and $20,000.00 demands made by Ms. Landrith included the release of Plaintiffs' purported bad faith claim against Defendant.

tual $9,000.00 arbitration award–which was obtained pursuant to the terms of the parties' policy–is *$16,000.00 less* than the policy limit, *$11,000.00 less* than Ms. Young's final demand, and only *$3,700.00 more* than Defendant's final offer. *(Id.)*.[12]

Accordingly, viewing the evidence in the light most favorable to Defendant, the Court will deny Plaintiffs' Partial Motion for Summary Judgment with respect to its argument that, as a matter of law, Defendant is liable for bad faith because it forced Plaintiffs through needless adversarial hoops in order to obtain policy benefits. *See Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Jesinger*, 24 F.3d at 1130.[13]

### B. Defendant's Cross–Motion for Summary Judgment

### 1. Legal standard: Defendant's reliance on *Knoell* in its Cross–Motion

In its Cross–Motion for Summary Judgment, Defendant does *not* cite *Zilisch* but relies on this Court's decision in *Knoell v. Metropolitan Life Insurance Co.*, 163 F.Supp.2d 1072 (D.Ariz.2001). Applying the two-prong objective/subjective test set forth in *Knoell*, Defendant argues that it is entitled to summary judgment because Plaintiff's insurance claim was "fairly debatable" as a matter of law.

In *Knoell*, however, there were genuine issues of fact as to *coverage* in part because "[p]laintiff's own doctor's reports raised significant questions regarding whether [p]laintiff's disability was temporary or permanent and ... partial or total." 163 F.Supp.2d at 1076.[14] Indeed,

**12.** In *Zilisch*, the UM policy limit was $100,000.00, the defendant offered $55,000.00, and the arbitrators awarded the plaintiff $387,500.00. 995 P.2d at 278–79. Thus, unlike this case, the arbitration award in *Zilisch* was *$287,500.00 more* than the policy limit and *$332,500.00 more* than the defendant's final offer. *Id.*

**13.** In its "Statement of Undisputed Material Facts" section and Reply, Plaintiffs state that Defendant handles "minor impact soft tissue" ("MIST") claims pursuant to its Claim Core Process Redesign ("CCPR") manual. (Mot. at 6–8). Plaintiffs, however, have failed to offer any significantly probative evidence that the CCPR manual directly affected the handling of Ms. Young's claim and, as Plaintiffs stated at the July 1, 2003 oral argument, they are not moving for summary judgment on an "institutional" bad faith theory.

**14.** This Court has previously recognized the difference between cases involving coverage issues and cases that involve only the amount of damages or benefits:

> *Zilisch*, the case which articulated the model of considering claims processing as an additional basis for bad faith even when a claim is fairly debatable, was a case involving under-insured motorist coverage. In

> *Zilisch*, there was no question that the plaintiff's under-insured motorist coverage applied. The allegedly debatable issue was the amount of damages, which turned on the extent of the plaintiff's injuries. A cause of action for bad faith in claims processing would not lend itself to all insurance claims. For example, if the insurance company took the position that, accepting the facts as the insured had presented them as true, the injury to the insured would be outside the scope of the policy, then there would be no additional investigation or evaluation for the insurance company to undertake. Therefore, as long as the insurance company's interpretation of the policy was reasonable, there would be no additional bad faith inquiry. Conversely, in a case where there is clearly coverage and the only issue is the amount of damages, then under *Zilisch*, the insurance company has a duty to determine this amount in a reasonable manner.

*Hedrick v. Cargill Steel*, No. CV–00–1956–PHX–JAT, at 15 n. 7 (D.Ariz. March 27, 2003) (denying summary judgment for defendant on bad faith claim because the "record create[d] a question of fact under *Zilisch* as to whether [defendant] acted reasonably in its processing of [p]laintiff's claim"). Here, unlike *Knoell*, the question was the amount of damages, *not* whether there was coverage.

even through the date of the Court's decision, there was no evidence that the defendant had ever actually denied the plaintiff's claim because the plaintiff refused to cooperate with the defendant during its investigation. *Id.* at 1076 n. 3. The Court held that a plaintiff cannot refuse to cooperate and then argue that his insurance company committed bad faith by refusing to pay benefits immediately. *Id.* at 1075–76.[15] The Court also stated that insurance companies "can challenge claims that are fairly debatable without having acted in bad faith." *Id.* at 1076.

The Court, however, did "not find any facts ... that [were] similar to the facts in *Zilisch.*" *Id.* at 1078. The Court acknowledged that (1) an insurance company may be found liable for the bad faith handling and processing of even fairly debatable claims, and (2) that *"Zilisch* states that an insurance company's *belief* that the claim is fairly debatable is a question of fact for the jury." *Id.* at 1077 (emphasis in original). However, "because there [were] no questions of fact to present to a jury about whether the insurance company really believed it should investigate the claim verses just using the investigation as a pretext to avoid payment, [the] Court conclude[d] that the [d]efendant did not act in bad faith by investigating the claim" as a matter of law. *Id.*

▆▆▆ Here, unlike in *Knoell,* coverage was undisputed and only the amount of damages was arguably debatable. Thus, in addition to showing that the amount of Ms. Young's claim was fairly debatable as a matter of law, Defendant must show that it is entitled to judgment as a matter of law under the "basic rules" for handling claims set forth in *Zilisch. See Zilisch,* at 279–80.[16] Under *Zilisch,* "[t]he

appropriate inquiry is whether there is [in]sufficient evidence from which reasonable jurors could conclude that in the *investigation, evaluation,* and *processing* of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." *Id.* at 280 (citing *Noble,* 624 P.2d at 868; *Deese,* 838 P.2d at 1268) (emphasis added).

### 2. Plaintiffs' Response

#### a. applicable legal standards

In their Response, Plaintiffs briefly set forth the rules regarding motions for summary judgment and correctly state that "Defendant's [M]otion turns these accepted rules upside down ... [and] attempts to describe evidence in the light most favorable to [Defendant]." (Resp. at 1–2) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Noting that "Defendant relies heavily on this Court's decision in *Knoell[ ],* ... Plaintiffs believe that [Defendant] is misinterpreting and misapplying ... *Knoell.*" (*Id.* at 3). After distinguishing *Knoell* from the facts of this case, Plaintiffs state that Defendant "wants this Court to do what the Court of Appeals did in *Zilisch –* 'The court of appeals focused exclusively on the amount ultimately offered by the carrier and said that everything else was irrelevant.' " (*Id.* at 3–4) (quoting *Zilisch,* 995 P.2d at 280). Noting that the Arizona Supreme Court rejected the court of appeals' analysis, Plaintiffs set forth the applicable legal standard for bad faith claims in Arizona and argue that Defendant committed bad faith in this case in part be-

---

**15.** Defendant stated at the oral argument that it does not contend that Ms. Young failed to cooperate with Defendant.

**16.** Even in *Knoell,* the Court applied the "general standard of reasonableness" set forth in *Zilisch* to the defendant's handling of the plaintiff's claim. 163 F.Supp.2d at 1077.

cause Defendant unreasonably investigated, evaluated, and processed Ms. Young's claim. (*Id.* at 8–12).

### b. Defendant's investigation of the claim

Plaintiffs argue that Defendant "failed to conduct a reasonable investigation, and the minimal investigation it did conduct was slanted toward" Defendant. (Resp. at 4). Plaintiffs contend that Defendant's investigation was unreasonable because Defendant: (1) failed to get a recorded statement from Mr. Beystrum; (2) took photographs of only Ms. Young's vehicle, which was the "least damaged" vehicle; (3) told Ms. Young that impact absorbers on her Isuzu Rodeo would have absorbed any forces from the accident when in fact the steel bumper is bolted right to the steel frame of the Isuzu without absorbers;[17] (4) inspected the Isuzu and found the bumper to be damaged, yet this damage was not included in the repair estimate; (5) threatened subrogation against Mr. Beystrum and suggested to him that, based upon the vehicle damage, no one could be injured; (6) failed to enlist the services of a biomechanical engineer on the issue of injury causation; and (7) chose not to speak with Ms. Young's health care providers even though she authorized Defendant to do so. (*Id.* at 4, 10).

### c. Defendant's processing of the claim

Plaintiffs argue that though Defendant was aware of Ms. Young's medical treatment and providers, "it failed to even con-

sider a number of bills in its first and 'final voluntary offer' made to [Ms. Young] on July 13, 1999." (*Id.* at 11). Plaintiffs contend that Defendant failed to include the following medical bills in its offer: (1) a bill of $81.74 for Ms. Young's urgent care visit on February 15, 1999; (2) a bill of $94.00 for x-rays; (3) a bill of $36.50 for a family doctor visit; (4) bills for prescription medicines; and (5) the total bill from Vax–D for physical therapy. (*Id.* at 11–12).[18] Plaintiffs note that Defendant "is now apparently claiming it did not have all of the medical bills at the time of its 'final voluntary offer.'" (*Id.*). In response, Plaintiffs contend that Defendant should have conducted a complete investigation before making a final offer and should not have made a preliminary offer subject to a "full and final release." (*Id.*). Plaintiffs further contend that Defendant's offer failed to include (1) any amount for general damages, and (2) seven hours of work that Ms. Young missed due to the accident. (*Id.* at 11–13).[19] Finally, Plaintiffs contend that Defendant (1) subjected Ms. Young to insult and personal abuse by taking the unreasonable position that Ms. Young's injuries were not as severe as she claimed, and (2) "attempted to play the uninsured motorist against [Defendant's] own insured." (*Id.* at 14–16).

### d. Defendant's evaluation of the claim

Plaintiff argues that Defendant did not make a "good faith effort to fairly evaluate the claim," but instead used "arbitrary offsets" and manipulated claim evaluation "tools" to "overrul[e] its own adjuster's evaluation to force a low-ball offer" on Ms. Young. (*Id.* at 16–19).[20]

---

**17.** Plaintiffs claim that "[t]his was a reckless statement at best, and constituted the unlicensed practice of engineering." (*Id.* at 4).

**18.** Plaintiffs confirmed at the oral argument that the first three bills totaled $212.24. Defendant did not address these bills at the oral argument.

**19.** As with the medical bills discussed above, Defendant did not address the seven hours of missed work at the oral argument.

**20.** Plaintiffs also contend that Defendant concealed evidence. (*Id.* at 19).

### e. Defendant's alleged "institutional" bad faith

 Finally, Plaintiffs contend that Defendant is liable for "institutional" bad faith and subject to punitive damages based on its unreasonable handling of MIST claims under the CCPR manual. (*Id.* at 20–22) (citing *Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 733 P.2d 1073 (1987)). Plaintiffs contend that Defendant "shifted the claim department mission from 'trying to pay a fair claim' to one of improving the company's bottom line by focusing on ways to unfairly low-ball and avoid the payment of claims, thus providing a blue print for bad faith claims handling." (*Id.* at 20). Plaintiffs conclude that, as in *Hawkins*, Defendant's "actions were part of a wide-spread scheme to cheat its insureds" and Plaintiffs have "demonstrated how profitability motivated the insurer's actions." (*Id.* at 21).[21]

As the Court stated in *Knoell*, however, "[t]he evolution of the law of bad faith has not reached the point where it is wrong for an insurance company to make a profit, much less follow good business practices." 163 F.Supp.2d at 1078. The Court finds that Defendant's alleged conduct was *not* "part of a wide-spread scheme to cheat its insureds." (Resp. at 21). In short, Plaintiffs have failed to show a genuine issue of material fact "that CCPR and MIST are anything other than sound business and claim-handling practices." (Def.'s Reply at 10); *see Miller v. Allstate Ins. Co.*, No. CV–98–1974–WMB–SHX, 1998 WL 937400, at *4–5 (C.D.Cal. Sept. 21, 1998) (reviewing CCPR and MIST and granting Allstate summary judgment on plaintiff's institutional bad faith claim). Accordingly,

the Court will grant Defendant's Cross–Motion for Summary Judgment in part to the extent Plaintiffs allege an "institutional" bad faith claim based on MIST and the CCPR manual.

### 3. Defendant's Reply

Although Plaintiffs explained in their Response that Defendant misinterprets this Court's decision *Knoell*, Defendant nonetheless contends that "Plaintiffs are mistaken" and that "[n]ot only does *Knoell* correctly analyze Arizona law, it is also binding precedent in this Court." (Reply at 2). Defendant erroneously argues that *"Knoell* holds that if an insurance claim is fairly debatable, that ends the bad-faith inquiry, and the Court need not determine whether the carrier engaged in consciously unreasonable *conduct*" in investigating, evaluating, and processing the claim. (*Id.*) (emphasis added). Defendant states the following regarding this Court's decision in *Knoell* and the Arizona Supreme Court's decision in *Zilisch*:

> Fair debatability, as applied by this Court in *Knoell*, is the same as determining whether the insurer *acted* in an objectively reasonable manner under the circumstances. *Zilisch* recognized the same principle when it explained that an insurer does not *act* in bad faith when it challenges claims that are "fairly debatable."

(*Id.* at 3) (emphasis added). To the contrary, *Zilisch* held that (1) "[w]hile it is clear that an insurer may defend a fairly debatable claim, all that means is that it may not defend one that is not fairly debatable"; and (2) "in defending a fairly

---

**21.** The Court notes that Plaintiffs have not offered any significantly probative evidence that the alleged bad faith claims handling practices set forth in the CCPR manual had any effect on the handling of Ms. Young's claim. *See Knoell*, 163 F.Supp.2d at 1078 ("Plaintiff has not offered evidence to show

that these practices were ever specifically applied to [p]laintiff."). To the contrary, Plaintiffs contend that Defendant committed bad faith in part by *failing to follow certain claims handling procedures set forth in the CCPR manual.* (Resp. at 4, 10).

debatable claim, an insurer must *exercise reasonable care and good faith.*" 995 P.2d at 279 (emphasis added). In addition, though this Court found that "fair debatability" was the applicable standard *based on the particular facts in* Knoell, it recognized that bad faith claims must also be analyzed "applying a general standard of reasonableness." 163 F.Supp.2d at 1077.

Without citing any legal authority, Defendant further contends that "if courts look to whether a carrier's liability is fairly debatable in a case in which coverage has been denied and is 'premised on failure to pay benefits,' *Knoell,* at 1076, *a fortiori* the Court should apply the same standard in a case in which coverage is accepted and liability is allegedly 'premised on failure to pay *sufficient* benefits.'" (Reply at 4) (emphasis in original). As noted above, however, this Court has previously recognized the difference between cases involving coverage issues and cases that involve only the amount of damages or benefits. *See Hedrick v. Cargill Steel,* No. CV–00–1956–PHX–JAT, at 15 n. 7 (D.Ariz. March 27, 2003) (denying summary judgment for defendant on bad faith claim because the "record create[d] a question of fact *under* Zilisch as to whether [defendant] *acted reasonably in its processing* of [p]laintiff's claim") (emphasis added).

Instead of addressing under *Zilisch* the evidence Plaintiffs offer in support of their bad faith claim, Defendant simply deems such evidence "nitpicking" and discusses its evidence that Ms. Young's claim was "fairly debatable." (Reply at 4–8). Defendant concludes that "the bottom line is that the parties here clearly had a good faith dispute about the value of Ms. Young's uninsured motorist claim [and] they submitted that claim to arbitration[.]" (*Id.* at 4).[22] Such a conclusory statement, however, does not demonstrate that Defendant's acts and omissions in investigating, evaluating, and processing Ms. Young's claim were not unreasonable as a matter of law.[23]

Finally, Defendant contends that "the facts of this case are completely consistent with the claims personnel's testimony that they *intended* to pay an appropriate amount of Ms. Young's claim and treat her fairly." (*Id.* at 8) (emphasis in original). Credibility and states of mind, however, are issues for the jury, not the Court. *See, e.g., Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Orme Sch. v. Reeves,* 166 Ariz. 301, 802 P.2d 1000, 1010 (1990).

Accordingly, the Court will deny Defendant's Cross–Motion for Summary Judg-

---

**22.** Without addressing *Zilisch* or citing any Arizona legal authority, Defendant contends that, as a matter of law, "an insurance company should not be held liable for bad faith if it resolves a dispute with its insured over the value of a claim through an arbitration procedure mandated by the terms of the parties' insurance agreement." (*Id.* at 5) (citing *Aronson v. State Farm Ins. Co.,* 2000 WL 667285, *9 (C.D.Cal.2000); *Anderson v. Farmers Ins. Co.,* 130 Idaho 755, 947 P.2d 1003, 1007 (1997)). Based in part on the "basic rules" set forth in *Zilisch* regarding the handling of claims *reasonably* and in *good faith,* the Court declines to adopt the rule that an insurer is not liable for bad faith as a matter of law merely because the claim was arbitrated pursuant to the policy.

**23.** Defendant notes that "an insurance company's failure to adequately *investigate* only becomes material when a further *investigation* would have disclosed relevant facts." (Reply at 6) (citing *Aetna Cas. & Surety Co. v. Superior Court (Gordinier),* 161 Ariz. 437, 778 P.2d 1333, 1336 (1989)) (emphasis added). This rule in *Aetna,* however, is not relevant to whether Defendant unreasonably *evaluated* and *processed* Ms. Young's claim. Moreover, regardless of whether the Court considers Defendant's acts or omissions as investigation, evaluation, or processing, Plaintiffs have offered evidence that a reasonable investigation, evaluation, and/or processing of Ms. Young's claim would have uncovered certain medical bills and lost earnings not included in Defendant's final voluntary offer.

ment except with respect to Plaintiffs' "institutional" bad faith claim.

### Conclusion

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Partial Summary Judgment Re: Bad Faith (Doc. # 93) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Cross–Motion for Summary Judgment (Doc. # 144) is **GRANTED IN PART** and **DENIED IN PART** as set forth in this Order.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Strike [Defendant's] Amended Reply to Plaintiffs' Statement of Facts (Doc. # 180) is **DENIED.**