**Thomas KNOELL, a married man, Plaintiff,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, a/k/a MetLife, f/k/a New England Mutual Life Insurance Company, a foreign insurer, Defendant.**

**No. CV–99–1128–PHX JAT.**

United States District Court,
D. Arizona.

July 25, 2001.

## ORDER

TEILBORG, District Judge.

Pending before this Court is Defendant's Motion for Partial Summary Judgment (Doc. # 54–1) on the issues of bad faith and punitive damages. After considering the pleadings on file, the argument of the parties and the applicable law, the Court has determined that the Motion should be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was CEO of a home construction and marketing business. During the period of Plaintiff's employment, Plaintiff purchased a long-term disability policy from Defendant. Plaintiff ceased working in August 1997.[1] In March 1998, Plaintiff submitted a claim to Defendant for long-term disability benefits under the policy. In the March 1998 claim, Plaintiff asserted that he had been totally disabled since November 24, 1997. Plaintiff substantiated this claim with a report from his treating psychiatrist, Dr. Thomas Nelson. The report indicated that Plaintiff would not be able to work for five months. (*See* Defendant's Statement of Facts in Support of its Motion for Partial Summary Judgment, Exhibit 4.) Based on the report, Defendant paid five months disability benefits (November 24, 1997–April 24, 1998) reduced by the elimination period.

Dr. Nelson's report also indicated that Plaintiff would continue to be partially disabled through June 1, 1998. (*See* Defendant's Supplemental Statement of Facts in Support of its Motion for Partial Summary Judgment, Exhibit 17.) Under the policy, Plaintiff is entitled to partial disability benefits during any period of a partial disability. The amount of benefits to which Plaintiff is entitled during a partial disability is based on his reduction in earnings due to his disability. Defendant began an investigation of whether Plaintiff would be entitled to partial disability benefits under the policy from April 24, 1998 to June 1, 1998.

Defendant's investigation had two prongs. One prong was to investigate Plaintiff's financial situation to determine whether the reduction in earnings Plaintiff was experiencing was due to his disability. The second prong was to further review Plaintiff's doctor's reports and request additional information to determine whether Plaintiff's condition supported a claim of partial disability.

The additional information submitted by Plaintiff's doctor was not conclusive as to whether Plaintiff was partially disabled in the opinion of Defendant. As a result, Defendant conducted further investigation.[2] During this time, Defendant was waiting to receive the financial information. All of the financial information requested by Defendant was available in September 1998. By October 1998, Defendant had completed its investigation and had determined that Plaintiff did not qualify for partial disability benefits.

However, in November 1998, Plaintiff's doctor changed his diagnosis of Plaintiff and determined that Plaintiff could not return to work until February 1999. Defendant conducted further investigation of this new diagnosis including having a conversation with Plaintiff's doctor in January 1999. As a result of this conversation, Defendant determined that a field visit with Plaintiff was necessary to assess the

---

1. Due to financial and business difficulties, the company ceased sales in May 1997.

2. The additional information submitted by Plaintiff's doctor pushed back the date Plaintiff could return to work on a part time basis to July 1998. Defendant learned of this new part time work date in the report received May 28, 1998.

situation. Plaintiff's doctor informed Defendant that Plaintiff was medically able to participate in the field visit. Plaintiff's doctor also advised Defendant that it was unclear whether Plaintiff was totally or partially disabled. In March 1999, Defendant contacted Plaintiff and asked to meet with him. At this time, Defendant paid one month's full disability benefits under a reservation of rights (for December 9, 1998 to January 8, 1999).

Plaintiff refused to meet with the field representative. Defendant then advised Plaintiff in April 1999 that it would accept a written response to its inquires in lieu of a field visit. Plaintiff did not respond to the request. Plaintiff filed this lawsuit in May 1999.

Defendant concedes that it has now received the information it originally requested through discovery in this case. After receiving this information, Defendant paid Plaintiff full disability benefits through March 2000. Defendant refused to pay benefits beyond this date without an independent medical examination. This Court has granted a motion to compel such examination.

## II. STANDARD OF REVIEW

### A. SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, summary judgment is mandated, "... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed. R, Civ. P. 56(e)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247–48, 106 S.Ct. 2505.

### B. INSURANCE BAD FAITH

As stated above, typically questions of fact are matters for the jury to decide. In this case, there is a question of fact as to whether Plaintiff is entitled to on going disability benefits and that question will be submitted to the jury. Conversely, in the context of the issue of "fairly debatable" in insurance bad faith, if there is a question of fact as to whether the insurance company owed benefits under the policy, then the claim is fairly debatable. *Lasma Corp. v. Monarch Ins. Co.,* 159 Ariz. 59, 764 P.2d 1118, 1122 (1988). When a claim is fairly debatably, the insurance company cannot be liable for acting in bad faith by declining to pay such claim immediately. *See id.* Accordingly, when there is a question of fact as to liability on the underlying policy, then as a matter of law, the insurance company is not liable for bad faith.

## III. DISCUSSION

### A. CLAIM OF BAD FAITH TOWARD PLAINTIFF PERSONALLY

■ The parties agree that Arizona law controls whether Defendant acted in bad faith in this case. *See generally* Plaintiff's Response to Motion for Partial Summary Judgment at 5–6, 10–11, 13; Defendant's Motion for Partial Summary Judgment 10–16. Under Arizona law, for a plaintiff to show that an insurance company acted in bad faith plaintiff must show the absence of a reasonable basis for denying benefits and that the insurance company either knew or recklessly disregarded the fact that it did not have a reasonable basis for denying benefits. *Noble v. National Am. Life Ins. Co.*, 128 Ariz. 188, 624 P.2d 866, 868 (1981).

■ The first prong of the test for bad faith is an objective test based on reasonableness. *Trus Joist Corp. v. Safeco. Ins. Co.*, 153 Ariz. 95, 735 P.2d 125, 134 (App.1986). Thus, if the actions taken on the part of the insurance company were reasonable, the insurance company will not be found to have acted in bad faith. *Id.* In determining whether the insurance company acted reasonably in a case premised on failure to pay benefits, the Court considers whether the insurer's liability under the policy was "fairly debatable." *See Deese v. State Farm Mut. Auto. Ins. Co.*, 172 Ariz. 504, 838 P.2d 1265, 1268 (1992). Thus, under the first prong, Defendants can challenge claims that are fairly debatable without having acted in bad faith. *See*

*Clearwater v. State Farm Mut. Auto. Ins. Co.*, 164 Ariz. 256, 792 P.2d 719, 723 (1990).

■ If Plaintiff can show that the first prong is met, then Plaintiff must also be able to show the second prong. The second prong is a subjective test. *Trus Joist Corp.*, 735 P.2d at 134. Thus, Plaintiff must show that the insurance company committed "consciously unreasonable conduct." *Id.* "Consciously unreasonable conduct" requires that the insurance company either acted knowing it was acting unreasonably or acted with sufficiently reckless disregard of the fact that it did not have a reasonable basis for denying the claim that knowledge can be imputed to it. *Id.*[3]

■ With respect to whether Plaintiff's claim was "fairly debatable," it is not clear from the facts of this case that the insurance company was required to pay benefits. Based on the terms of the contract, the insurance company was entitled to have written proof of loss before paying benefits. The undisputed facts show that Defendant attempted to obtain the necessary written proof of loss and that Plaintiff would not assist Defendant or provide the information. Plaintiff cannot refuse to cooperate in providing information and then argue that his insurance company committed bad faith by refusing to pay benefits. Moreover, Plaintiff's own doctor's reports raised significant questions regarding whether Plaintiff's disability was temporary or permanent and whether Plaintiff's disability was partial or total. Therefore, the Court finds that Plaintiff's claim was fairly debatable. Accordingly, Defendant cannot be liable for bad faith.[4]

---

**3.** The Court notes that Plaintiff cites several cases showing that for an insurance company to be found to have acted reasonably, it must have conducted a fair investigation before denying a claim. However, up to the date of the initiation of the lawsuit, and as far as the Court can tell, even through today, there is no evidence in this case that Defendant ever ac-

tually denied Plaintiff's claim. Nonetheless, the Court will consider the reasonableness of the investigation below.

**4.** Because the Court has found that Plaintiff's claim was fairly debatable, the Court need not consider the second prong of *Noble,* which is

Plaintiff raised four specific arguments regarding why Plaintiff believes Defendant acted in bad faith. Though the Court finds that "fairly debatable" is the standard for judging whether the actions taken in Plaintiff's case were done in bad faith, the Court will nonetheless consider Plaintiff's arguments to determine whether such arguments support a claim of bad faith applying a general standard of reasonableness.

First, Plaintiff argues that Defendant's investigation was done in bad faith because it investigated the possibility of partial benefits when Plaintiff's original claim was for total benefits. However, Defendant's theory for partial benefits arose from the report of Plaintiff's doctor. (See Defendant's Reply in Support of its Motion for Partial Summary Judgment at 2). Additionally, Plaintiff has offered no evidence that Defendant ever attempted to advise him that he was only entitled to partial benefits and not full benefits. Therefore, the Court does not find that merely investigating the possibility of paying partial benefits, even though Plaintiff wanted full benefits, is bad faith.

Second, Plaintiff argues that the information Defendant was seeking in its investigation was requested in bad faith because such information was not necessary to substantiate Plaintiff's claim for total disability benefits. While it is true that the requested information about Plaintiff's financial condition would only be relevant to a claim for partial benefits, since Plaintiff's own doctor as late as March 1999 could not conclusively say whether Plaintiff was partially or totally disabled, this Court does not find, nor does the Court believe a jury could find, that such request was made in bad faith.

Third, Plaintiff argues that the issue of whether a claim was fairly debatable is always a question for the jury. Plaintiff cites *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 196 Ariz. 234, 995 P.2d 276, 279 (2000) as support for this argument. Plaintiff is correct that *Zilisch* states that a insurance company's *belief* that the claim was fairly debatable is a question of fact for the jury. *Id.* However, Plaintiff offers no facts which call into question Defendant's belief that it should investigate Plaintiff's claim. Thus, because there are no questions of fact to present to a jury about whether the insurance company really believed it should investigate the claim verses just using the investigation as a pretext to avoid payment, this Court concludes that the Defendant did not act in bad faith by investigating the claim.

Fourth, Plaintiff alleges that Defendant's investigation at all points was unreasonable and creates a jury question on the issue of bad faith. Plaintiff alleges that Plaintiff's doctor's evidence always said he was totally disabled. Thus, Plaintiff argues, any investigation of partial benefits or any stop in payment of total benefits is bad faith. However, Plaintiff fails to recognize that Plaintiff's own doctor, the only doctor who treated Plaintiff, said he was not sure whether Plaintiff was totally or partially disabled and opined that there would be a date after which Plaintiff was no longer disabled. Based on these statements, it is reasonable that Defendant would conduct a complete investigation before payment of benefits. Thus, a reasonable jury would not find that Defendant committed bad faith because of the investigation performed.[5]

---

whether Defendant engaged in consciously unreasonable conduct.

5. The Court notes that on the point of the adequacy and reasonableness of the investigation, Plaintiff's argument is somewhat inconsistent. Plaintiff argues that Defendant's investigation was not thorough enough because it did not interview co-workers or have an independent medical exam before denying benefits. At the same time, Plaintiff also ar-

## B. CLAIM OF BAD FAITH BASED ON PRACTICES OF DEFENDANT

 Plaintiff has offered evidence in the form of the deposition testimony of two potential witnesses regarding the actions and practices of Defendant which Plaintiff argues show that Defendant generally acts in bad faith.[6] Plaintiff has not offered evidence to show that these practices were ever specifically applied to Plaintiff. Thus, this Court is asked to consider whether, assuming these practices are true, such practices amount to a question of bad faith that should be considered by a jury.[7]

Plaintiff again cites *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 196 Ariz. 234, 995 P.2d 276 (2000), to support his theory that in addition to Defendant's handling of Plaintiff's claim potentially giving rise to liability for bad faith, Defendant may also be liable for bad faith if its general claims handling practices are done in bad faith. In *Zilisch*, the Arizona Supreme Court held that certain practices of State Farm, including setting arbitrary goals for the reduction of claims paid and paying salaries and bonuses based on the amount paid out in claims coupled with specific actions taken in Plaintiff's case were sufficient to create a question for the jury regarding whether the company acted in bad faith. *Id.* at 280. Notably, in Zilisch's case, ten months after the initial demand to pay the claim, State Farm continued to decline to pay even though it had four doctor's reports supporting payment. *Id.* Further, after receiving a fifth doctor's report, State Farm took four more months to pay. *Id.* And, during the additional four months, State Farm made several low offers to try to settle the claim. *Id.*

 The Court does not find any facts here that are similar to the facts in *Zilisch*. The evolution of the law of bad faith has not reached the point where it is wrong for an insurance company to make a profit, much less follow good business practices. For instance, having a round table discussion where more than one person evaluates the status of a claim is not a company acting in bad faith. Additionally, a company keeping statistics on resolution of claims and looking to their "bottom line" are reasonable internal procedures; particularly when Plaintiff has offered no evidence that this behavior ever resulted in the denial of a legitimate (or illegitimate) claim. Finally, as discussed above, all of the practices that occurred in Plaintiff's actual case were reasonable in light of the evidence that was submitted to Defendant. Thus, this Court finds that none of the claims practices alleged to have been engaged in by Defendant, assuming such practices are true, rises to the level of bad faith.[8]

gues that the investigation was so cumbersome as to be unreasonable because Defendant wanted to interview Plaintiff via the field interview.

6. The parties contest whether this evidence is admissible. Defendant claims that at least one of the witness was not timely disclosed. Plaintiff has asked the Court to strike Defendant's reply regarding the claims practices because the information contained in the reply was not disclosed to Plaintiff. For purposes of this Order only, the Court has presumed Plaintiff's evidence is admissible and has not considered the substantive arguments relating to these two witnesses raised by Defendant in its reply.

7. The practices in question, including by way of example statistical tracking of claims that have been terminated, are listed in bullet point format on pages 7–9 of Plaintiff's Response to Defendant's Motion for Partial Summary Judgment.

8. The Court has reviewed and considered the deposition testimony of Plaintiff's expert and does not find that it creates a question of fact on the issue of bad faith. First, much of the deposition of the expert relied on by Plaintiff contains legal conclusions, which are not an appropriate topic for expert opinion. Thus, to the extent the testimony is merely the legal conclusions Plaintiff is advocating, this Court

## C. PUNITIVE DAMAGES

At oral argument, Plaintiff conceded that if this Court finds that Defendant did not act in bad faith, then Defendant cannot be found liable for punitive damages. Therefore, because this Court has concluded that Defendant did not act in bad faith, the Court need not reach the issue of punitive damages. Additionally, Defendant's Motion for Summary Judgment on the issue of punitive damages will be granted.

## IV. CONCLUSION

Plaintiff has failed to provide the Court with evidence that would justify having a jury consider the issues of bad faith or punitive damages. Accordingly,

**IT IS ORDERED** that Defendant's Motion for Partial Summary Judgment (Doc. # 54–1) is granted;

**IT IS FURTHER ORDERED** that the additional discovery authorized by this Court's Order of May 5, 2001 shall be completed by September 28, 2001;

**IT IS FURTHER ORDERED** that the Final Pre–Trial Order shall be filed by October 29, 2001; and

**IT IS FURTHER ORDERED** that the Final Pre–Trial Conference is set for November 26, 2001 at 2:00 p.m. and the order setting final pre-trial conference will follow.

---

can disregard it. *See United States v. Scholl,* 166 F.3d 964, 973 (9th Cir.1999) (holding a legal conclusion is an inappropriate matter for expert testimony). Additionally, expert testimony does not preclude summary judgment when it is not supported by the record.

*Reynolds v. County of San Diego,* 84 F.3d 1162, 1169 (9th Cir.1996) (overruled on other grounds). This Court finds that the opinions of the expert on which Plaintiff most heavily relies are not supported by the record.