**Eddie MONTOYA LOPEZ, Plaintiff,**

v.

**ALLSTATE INSURANCE COMPANY, Defendant.**

**No. CIV.00–2205–PHX–JWS.**

United States District Court, D. Arizona.

Aug. 27, 2003.

---

Charles J. Surrano, III, Esq., John Neal Wilborn, Esq., Surrano Law Offices, Steve M. Tidmore, Esq., Ilya Elena Lerma, Law Office of Steve M. Tidmore, Phoenix, AZ, for Plaintiff.

P. Bruce Converse, Esq., Floyd P. Bienstock, Karl Michael Tilleman, Esq., Robert Jerome Moon, Steptoe & Johnson, LLP, Evan S. Goldstein, Esq., Herman, Goldstein & Forsyth, PC, Phoenix, AZ, for Defendant.

### ORDER FROM CHAMBERS

SEDWICK, District Judge.

### I. MOTION PRESENTED

At docket 115, defendant Allstate Insurance Company ("Allstate") moves for summary judgment. Plaintiff Eddie Montoya Lopez ("Lopez") opposes the motion at docket 122. The issues have been fully briefed. Oral argument was heard on August 27, 2003.

### II. BACKGROUND

#### A. The Accident and Underlying Arbitration

This is a suit alleging bad faith handling of an uninsured motorist claim. On March 5, 1999, Lopez was making a delivery for his employer when an uninsured motorist rear-ended him causing $177.53 in damages.[1] His employer's uninsured motorist policy with Allstate covered him. The police officer who wrote the report indicated that there were no injuries at the scene.[2]

Lopez alleges that shortly afterwards, however, he began experiencing pain in the right side of his neck, down to his shoulder.[3] When the pain did not subside, he consulted his physician, Dr. Donald Cryan. Dr. Cryan diagnosed Lopez with a whiplash injury.[4] When Lopez continued to report pain, Dr. Cryan referred him to Dr. Niranjan Chawla, a soft tissue injury specialist. Dr. Chawla examined Lopez and found that he was not in distress and had normal range of motion in neck flexion and no motor or sensory deficits. However, he found Lopez had somewhat limited neck extension and diagnosed him with cervical and scapulothoracic myofascial and/or myoligamentous strain. Dr. Chawla recommended exercises.[5] When Lopez continued to report pain, Dr. Chawla referred Lopez to NovaCare for rehabilitative care.[6] His physical therapist, Kelly Stevens, concurred in Dr. Chawla's diagnosis and commented that Lopez's "rehabilitation potential is good."[7] Lopez un-

---

1. Police Report (Doc. 116, Ex. 1); Damage Estimate (Doc. 116, Ex. 6).

2. Police Report, at 1.

3. Deposition of Eddie Montoya Lopez (Doc. 116, Ex. 2), at 75 ("Lopez Dep."). Page numbers refer to the deposition transcript pages.

4. Doc, 116, Ex. 4.

5. Doc. 116, Ex. 9.

6. Doc. 116, Ex. 13.

7. Doc. 116, Exs. 16, 17.

derwent treatment with NovaCare until he was discharged on June 22, 1999.[8] Dr. Chawla discharged Lopez in August. In the end, Lopez alleges he accrued $3,309.93 in medical bills.[9]

During this time, Allstate requested supporting documentation of Lopez's injuries and asked to interview Lopez in order to verify his injuries.[10] Lopez's attorney, Steve Tidmore, responded that he would provide Allstate with records once Lopez's treatment was complete.[11] After Dr. Chawla discharged Lopez on August 9, 1999,[12] Tidmore submitted a demand letter on behalf of Lopez on August 30, 1999.[13] The letter described Lopez's injuries, estimated his actual damages, and demanded $14,500 to settle because his injuries were "substantial in nature."[14]

In response, Greer requested an interview. However, an interview could not be completed until October 27, 1999.[15] At the interview, Lopez stated that he began suffering pain in his shoulder and neck about a half-hour after the accident and then asked to leave work to see his doctor.[16] He explained that he received care from Dr. Chawla and therapy with NovaCare through June 1999.[17] He claimed he had lost wages due to therapy and doctor appointments, but he also told Greer that he had submitted a worker's compensation claim and that the State Fund had paid all his bills.[18] A few days later, Allstate offered Lopez a compromise settlement of $1,000.[19] Lopez promptly rejected the offer as "insulting," demanded arbitration, and named his own arbitrator.[20] An arbitration hearing was held on March 28, 2000. The arbitration panel awarded Lopez $14,500.[21] Allstate promptly satisfied the award.[22]

8. The treatment notes repeatedly noted that he was improving. See Doc. 116, Exs. 18 (noting he feels better each day), 20 (stating that he was feeling "a lot better"), 21, and 24 (stating he "feels good" on May 24, 1999).

9. See Demand Letter (Doc. 116, Ex. 34). That amount did not include the bills from Dr. Cryan.

10. Doc. 116, Ex. 27 (letter dated April 16, 1999 requesting documents and description of injury); Doc. 116, Ex. 28 (letter from Greer to Tidmore dated May 18, 1999 requesting an interview); Doc. 116, Ex. 29 (follow up letter dated June 16, 1999).

11. Doc. 116, Ex. 30.

12. Doc. 116, Ex. 25.

13. Doc. 116, Ex. 34.

14. His only states actual damages were $3,309.93 in medical bills and $328.30 in lost wages. Doc. 116, Ex. 34.

15. Both parties suggest that the other party was the cause of the delay. What is clear is that Tidmore did not respond to Greer's renewed request until September 23, 1999.

Doc. 116, Ex. 36. It was only a few days later that Tidmore wrote the letter to Greer claiming that she was holding up scheduling. Doc. 116, Ex. 29. On October 1, the parties did agree to conduct the interview on October 7. However, it was Tidmore's office which called to cancel that interview because Lopez had jury duty. Doc. 116, Ex. 39.

16. Transcript of Interview (Doc. 116, Ex. 14), at 8 ("Interview").

17. Interview, at 10.

18. Interview, at 10.

19. Doc. 116, Ex. 40. The letter stated that Greer was not willing to concede injury and that given the relatively minor impact of the vehicles, arbitration would likely yield the same result.

20. Doc. 116, Ex. 41.

21. Doc. 116, Ex. 44. Allstate's arbitrator determined Lopez's damages to be $8,200 but the other 2 arbitrators found the damages were $14,500.

22. Doc. 116, Ex. 46.

## B. Present Suit and Procedural History

On November 2, 2000, Lopez filed a complaint in Maricopa County Superior Court alleging bad faith. Therein, Lopez alleged that he had "supplied, timely, all reasonable and necessary information, documents and bills to Defendant" but that, "despite Plaintiff's repeated efforts to be fairly paid under the provisions of the policy, the Defendant refused to make any reasonable offer of payment and, in fact, consistently offered substantially less than Plaintiff's actually incurred medical bills and specials." [23] Specifically, plaintiff alleged that the following actions by defendant constituted bad faith:

a. Failing to settle Plaintiff's claim at a reasonable sum;

b. Delaying the payment and processing of Plaintiff's claim unreasonably;

c. Unreasonably forcing Plaintiff through the arbitration process in order for him to ultimately obtain a fair award for his damages;

d. "low balling" Plaintiff on the value of his claim;

e. Failing to give equal consideration of Plaintiff's interests;

f. Arbitrarily refusing to pay above a certain amount for certain classes of claims, of which Plaintiff was one;

g. Creating additional and unnecessary burdens on its insured, Lopez, and persons with claims such as his;

h. Unreasonably profiling and discriminating against certain classes of claims of claimants such as Lopez;

i. Failing to pay the undisputed portion of Lopez's claim.[24]

Allstate properly removed the case to this court pursuant to 28 U.S.C. §§ 1446(a) and 1332.[25] Discovery closed on January 31, 2003.[26] The parties stipulated to a dispositive motion deadline of May 30, 2003.[27] In accordance with that deadline, defendant filed the instant motion. Lopez responded at docket 122, and Allstate replied at docket 125.

## III. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if there is no genuine dispute as to material facts and if the moving party is entitled to judgment as a matter of law. The moving party has the burden of showing that there is no genuine dispute as to material fact.[28] The moving party need not present evidence; it need only point out the lack of any genuine dispute as to material fact.[29] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[30] All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[31] However, the nonmoving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the

---

23. Complaint (attached at Doc. 1), ¶¶ 13, 16.

24. Complaint, at 3.

25. Petition for Removal (Doc. 1).

26. *See* Scheduling and Planning Order at docket 96.

27. Doc. 109.

28. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

29. *Id.* at 323–325, 106 S.Ct. 2548.

30. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

31. *Id.* at 255, 106 S.Ct. 2505.

parties' differing versions of the truth at trial.[32]

## IV. DISCUSSION

### A. Bad Faith Insurance Claims Under Arizona Law

In Arizona, every insurance contract, including an automobile insurance policy, includes an implied covenant of good faith and fair dealing. The covenant requires that parties "refrain from any conduct that would impair the benefits or rights expected from the contractual relationship."[33] The covenant, therefore, obligates the insurer to "immediately conduct an investigation, act reasonably in evaluating the claim, and act promptly in paying a legitimate claim."[34] In *Zilisch*, the Arizona Supreme Court clarified the scope of the duty by setting forth some "basic rules." The court first explained that the tort of bad faith arises when an "insurer 'intentionally denies, fails to process or pay a claim without a reasonable basis.'"[35] In addition, the court explained that because the insurer has "some duties of a fiduciary nature," it could be "held liable ... when it seeks to gain unfair financial advantage ... through conduct that invades the insured's right to honest and fair treatment."[36]

To establish "bad faith" on the part of an insurer, plaintiff must show "the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim."[37] The inquiry involves both an objective analysis, which focuses on "whether the insurer acted unreasonably," and a subjective analysis, which focuses on "whether the insurer *knew* that its conduct was unreasonable or acted with such reckless disregard that such knowledge could be imputed to it."[38]

An insurer may avoid liability for bad faith by showing that the claim is "fairly debatable."[39] However, "its belief in fair debatability 'is a question of fact to be determined by the jury.'"[40] Nevertheless, if plaintiff offers no significant evidence that calls into question defendant's belief that the claim is debatable, the court may enter judgment as a matter of law.[41]

### B. Claim of Individual Bad Faith

Lopez alleges that Allstate violated its implied duty of good faith and fair dealing in processing his claim in the following ways: failing to settle for a reasonable sum, "low balling" the value of his claim, delaying processing of claim, forcing him into arbitration, and, finally, failing to pay undisputed portions of his claim. Allstate moves for summary judgment arguing that Lopez has not presented any evidence that creates an issue of material fact as to

**32.** *Id.* at 248–9, 106 S.Ct. 2505.

**33.** *Young v. Allstate Insurance Co.,* 2003 WL 21638281, at *3 (D.Ariz. July 9, 2003).

**34.** *Zilisch v. State Farm Mut. Auto. Ins. Co.,* 196 Ariz. 234, 995 P.2d 276, 280 (2000).

**35.** *Id.* at 279 (quoting *Noble v. Nat'l Am. Life Ins. Co.,* 128 Ariz. 188, 624 P.2d 866, 868 (1981)).

**36.** *Id.* at 279–80 (quoting *Rawlings v. Apodaca,* 151 Ariz. 149, 726 P.2d 565, 570 (1986)).

**37.** *Young,* 2003 WL 21638281, at *3 (citations omitted).

**38.** *Id.* (citations omitted); *Knoell v. Metropolitan Life Ins. Co.,* 163 F.Supp.2d 1072, 1076 (D.Ariz.2001).

**39.** *Knoell,* 163 F.Supp.2d at 1075.

**40.** *Id.* (quoting *Sparks v. Republic Nat'l Life Ins. Co.,* 132 Ariz. 529, 647 P.2d 1127, 1137 (1982)).

**41.** *Young,* 2003 WL 21638281, at *4 (citing *Knoell,* 163 F.Supp.2d at 1077).

whether or not acted in bad faith. Moreover, Allstate argues that all the evidence shows that it acted reasonably because the value of Lopez's claim was fairly debatable.

## 1. Processing of the Claim and Adequate Investigation

■ Allstate argues that it is entitled to summary judgment because Lopez fails to present any evidence that it unreasonably delayed in processing his claim. Allstate claims that the evidence shows that it made attempts to investigate the claim as best it could by obtaining the police report, photographing the vehicles, and attempting to interview the driver of the at-fault vehicle to determine her insurance status. Allstate points out that, in fact, the evidence shows that it was Lopez who delayed the process, in particular by refusing to be interviewed until October 1999.

The parties are in agreement that Lopez did not provide a statement or interview until after he had completed his medical treatment. In response to Greer's letter of June 16, 1999, Tidmore stated that when Lopez had been released from treatment, he would provide her with all the healthcare records and billing statements.[42] In other words, he refused to allow her to interview Lopez. Only after Greer requested an interview following Lopez's August 30 demand letter did Tidmore allow Greer to interview Lopez.[43] That was on September 23, 1999, and the interview was not held until October 27, 1999. However, Allstate presents evidence that the one-month delay was the result of, more than anything, Lopez's need to change the date from October 7 to October 27, 1999.[44]

Lopez, meanwhile, does not provide any evidence that Allstate contributed to the delay. Tidmore's claims that Greer was "obstructionist" and that her conduct indicated she did not want to interview Mr. Lopez do not create an issue of material fact because they constitute inadmissible hearsay.[45] In addition, his self-serving letter, written only six days after he responded to Greer's request, stating that she was being uncooperative, proves nothing. At most, it is his own opinion. There simply is no objective evidence of unreasonable delay. Lopez also fails to provide evidence of Greer's subjective unreasonableness. Therefore, Lopez fails to demonstrate that there is an issue of fact as to whether Greer unreasonably delayed in the investigation.

■ The other arguments that Lopez raises in opposition are similarly unavailing. The fact that Greer told Tidmore that she was closing Lopez's file until she received the items does not mean that she acted in "bad faith" absent a showing that this resulted in some sort of financial advantage to Allstate or that it resulted in additional delay in payment of his claim, independent of the failure to be able to interview Lopez. Nothing in Lopez's opposition shows that this is the case. Further, while Lopez's claim that the request for an interview was a pretext, if true, might prove bad faith, Lopez does not present any evidence that the request was pretextual. Instead, he attempts to shift the burden claiming that Allstate falls to show that it is not pretextual. However, that is not Allstate's obligation. Further, the claim that it was just another "hoop" for Lopez to jump through is merely a feeling that Lopez had;[46] it is not sup-

---

42. Doc. 116, Ex. 30; Doc. 123, Ex. 14.

43. *See* Doc. 123, Ex. 20.

44. Doc. 116, Ex. 29.

45. Doc. 123, Ex. 21. That portion of Tidmore's deposition recounts the statements of

a secretary who allegedly attempted to contact Greer.

46. Deposition of Eddie Montoya Lopez (Doc. 123, Ex. 9), at 42 ("Lopez Dep.").

ported by any evidence such as the absence of a requirement or practice that the adjuster speak with the insured.[47]

### 2. Offer of Settlement

 Lopez also claims that Allstate acted in bad faith by failing to settle his claim for a reasonable sum. Specifically, he claims that they "low balled" the value of the claim and failed to give equal consideration to his interests. Allstate, however, argues that it is entitled to summary judgment because plaintiff's claim was "fairly debatable" and the amount it offered was objectively reasonable in light of the evidence it had at the time.

Allstate satisfies its burden of demonstrating that, when it offered Lopez the $1,000 settlement, it was acting reasonably, both objectively and subjectively. Allstate points to evidence that suggests Lopez was exaggerating the injury or, at the very least, the length of his medical treatment was excessive. Three days after the accident, Dr. Cryan noted that plaintiff was already improving.[48] Dr. Chawla's notes indicate that Lopez was working and able to turn to look for blind spots.[49] Further, notes from Lopez's physical therapist indicate he was experiencing great improvement as early as

April 7, 1999.[50] Then, on April 21, 1999, an Allstate inspector observed Lopez moving without restriction, demonstrating a full range of motion, and looking backward over his right shoulder to back out of a parking space.[51]

Lopez has not put forth any evidence demonstrating that there is an issue of fact. Lopez objects to, what it characterizes as, the re-litigation of the injury because that issue was concluded by the decision of the arbitration panel.[52] However, Allstate does not discuss Dr. Cryan's opinion to establish conclusively that Lopez *did* receive excessive treatment; rather, it brings forth this evidence to show that it was objectively reasonable to question the amount of Lopez's settlement demand. Instead, Lopez then attempts to counter Allstate's evidence by objecting to Greer's "fanatical reliance" on the minor impact between the vehicles. He claims that it is unreasonable *per se* for Allstate to rely on that fact over the information contained in the police report, information provided by the insured, or opinions of the licensed medical providers. In addition to the fact that Lopez cites no case law for this *per se* rule, Lopez fails to provide evidence that could show Allstate did not consider the evidence.[53] Lopez cannot

---

**47.** On the contrary, Greer testified at her deposition that ordinarily her first task is to speak to the insured. Deposition of Elizabeth Greer (Doc. 115, Ex. 31), at 46 ("Greer Dep.").

**48.** Doc. 116, Ex. 8. The court agrees with Lopez that Allstate's reliance on Cryan's deposition testimony stating he though Lopez was "looking for something to hurt" (Doc. 116, Ex. 23, at 67) does not provide that its offer was reasonable because the testimony was not in existence when Allstate made its decision to offer only $1,000.

**49.** Doc. 116, Ex. 9

**50.** Doc. 116, Ex. 18, at 1 (stating on April 7, 1999 and that pain was more localized); Doc.

116, Ex. 20, at 1 (stating that on April 21, 1999, he was 90–95% better)

**51.** Doc. 116, Ex. 19.

**52.** Doc. 122, at 5–6.

**53.** Lopez claims that Greer's journal entry stating that "we have favorable photos [and] that is all we need" shows that she did not consider evidence beyond the severity of the accident. Doc. 123, Ex. 24, at 2. However, that note was written when all that Greer had before her was the photos because Lopez had not yet provided her with the medical records or an interview. Further, Greer testified that damage was just a starting point. Greer Dep., at 24.

base his claim on the fact that he does not like the result. He must show that Greer disregarded some crucial evidence showing that he needed such extensive treatment, in the face of the uncontested evidence that he was improving dramatically and immediately and that expert analyses showed his injuries could not have been as severe as he claimed.[54] Lopez fails to do so. The fact that the medical records suggest improvement early on is sufficient to establish that plaintiff's claim is fairly debatable.[55]

The mere fact that there was a large gap between Allstate's offer and the actual award in arbitration is insufficient proof of bad faith.[56] The arbitration panel's decision was based on Lopez's assertion that the injury was permanent.[57] However, when Greer made the offer, there was no evidence to indicate that it was anything but a short-term injury. On this, the parties are in agreement. Indeed, all the evidence concerning permanency arose after the offer was made.[58] Lopez argues, however, that Allstate was obligated to revise its offer in light of these admissions and its own acknowledgment that "an allegation of permanency greatly increases the potential value of a claim."[59] However, Lopez's statements concerning permanency were merely self-serving statements made in the course of discovery for the arbitration and, thus, did not clearly contradict the treatment notes, medical records, and State Fund record showing the injury was not permanent. Moreover, the statements provide no concrete evidence of the permanency of the injury. At best, they are inconclusive or merely express Lopez's own opinion.[60] Further, interestingly, in preparation for this litigation Lopez admitted that his injury is not permanent.[61]

### 3. Arbitration

Allstate also seeks summary judgment on Lopez's claim that Allstate forced him into arbitration. The court agrees with Allstate that this claim makes little sense because it is undisputed that it was Lopez who demanded arbitration.[62] Insofar as Lopez is suggesting that other actions of Allstate which constituted bad faith essentially forced him into arbitration, Lopez needs to prove the merits of those claims. As discussed above, he has not.

**54.** *See* Peles' Report (Doc. 116, Ex. 43) (concluding the accident could not have been caused more than transient muscle pain).

**55.** *Knoell*, 163 F.Supp.2d at 1076.

**56.** *Miller v. Allstate Insurance Co.*, 1998 WL 937400 at *5 (C.D.Cal. Sept. 21, 1998) ("that an arbitrator later determined that defendant owed $11,800 to plaintiff instead of the $1,820 offered by Allstate does not by itself constitute bad faith or unfair dealing").

**57.** Deposition of Brice Buehler, Esq. (Doc. 116, Ex. 45).

**58.** *See, e.g.,* Response to Request for Admissions (Doc. 123, Ex. 41); Rule 26.1 Disclosures (Doc. 123, Ex. 5), at 4; Responses to Non–Uniform Interrogatories (Doc. 123, Ex. 43).

**59.** *See* Doc. 122, at 16 (citing *Tucson Airport Authority v. Certain Underwriters At Lloyds, London,* 186 Ariz. 45, 918 P.2d 1063 (1996), for the proposition that the duty of good faith and fair dealing continues throughout the litigation process).

**60.** *See* Doc. 123, Ex. 5 (stating only that he "continues to suffer from intermittent tinnitus, headaches, right shoulder pain, neck pain and back pain"); Ex. 41 (stating he is uncertain whether he will require future medical care); Ex. 43, at 5 (stating he suspects his injuries are permanent).

**61.** Doc. 116, Ex. 48, at 2.

**62.** *See* Demand Letter.

## C. Claim of "Institutional" Bad Faith

 Finally, Allstate moves for summary judgment on what it characterizes as Lopez's claim for "institutional" bad faith. Lopez's complaint alleges that Allstate acted in bad faith on an institutional level in three ways: (1) "arbitrarily refusing to pay above a certain amount for certain classes of claims," (2) "creating additional and unnecessary burdens on its insured, Lopez, and persons with claims such as his," and (3) "unreasonably profiling and discriminating against certain classes of claims or claimants."[63] Allstate argues that it is entitled to summary judgment because Lopez fails to offer any support, factual or legal, for his claim of institutional bad faith and, even more important, fails to connect the alleged institutional bad faith with the handling of his claim. Allstate emphasizes that Lopez has not put forth any testimony or pointed to a single portion of Allstate's Claim Core Process Redesign ("CCPR") and the Minor Impact Soft Tissue ("MIST") component of the program that harmed him.

᛫ Lopez offers only two arguments in its opposition, neither of which is sufficient to overcome the lack of evidence pointed out by Allstate. First, Lopez refers to Market Conduct Exams ("MCEs") in Virginia, California, Alaska, and Pennsylvania and argues that the evidence of Allstate's conduct in those states is evidence of unreasonable conduct.[64] Those reports were conducted by the states' respective insurance departments to determine compliance with state regulatory law. Allstate, therefore, is correct that these MCEs have no bearing on the instant case. More important, Lopez fails to establish a connection between those reports and the specific allegations of misconduct here.[65]

Failing to point out any procedures or principles in the CCPR or MIST, Lopez instead relies on the opinion of Michael Cerf. Cerf, whose letterhead lists him as an expert witness in insurance claims practice, opines that, based on his review of the claim filed and documents produced by Allstate, "[t]he conduct of Allstate demonstrated its willful indifference to the obligation to act in good faith in the handling of the claim of Lopez ... [and] failed to comply with standard industry claims practice."[66] Cerf claims that Allstate's actions were based on "adherence to the dogmatic process of MIST"[67] and, were "not reasonable [and] unfounded."[68]

 Cerf's opinion is not sufficient to show an issue of fact. To begin, it is not presented in admissible form. It is submitted as a letter, rather than as an affidavit, deposition or trial transcript.[69] Further, there is no foundation for Cerf's opinion because there is no information about his qualifications as an expert.[70]

---

63. Complaint, ¶¶ 17(f), (g), (h).

64. Doc. 122, at 14 (citing *Hawkins v. Allstate Ins. Co.,* 152 Ariz. 490, 733 P.2d 1073, 1082 (1987) for the proposition that patterns of conduct are relevant and admissible to bad faith claims).

65. *Knoell,* 163 F.Supp.2d at 1078 (explaining that evidence in support of institutional bad faith claim is irrelevant unless plaintiff establishes a nexus between that evidence and the handling of plaintiff's individual claim).

66. Opinion Letter of Michael Cerf (Doc. 123, Ex. 32) ("Cerf Op.").

67. Cerf Op., at 5.

68. Cerf Op., at 4.

69. FED. R. EVID. 801(c); *Duplantis v. Shell Offshore, Inc.,* 948 F.2d 187, 191 (5th Cir. 1991) ("to properly use expert testimony to defeat summary judgment, nonmovant must proffer expert assessment in admissible form").

70. FED. R. EVID. 702.

Even if the opinion were presented in an admissible form, it is clear that there are serious problems with the substance of his opinion. First, Cerf's letter consists primarily of legal conclusions as to the reasonableness of Allstate's actions, which are not proper matters for an expert opinion and are to be disregarded.[71] In addition, Cerf's opinion is not supported by the record.[72] Lopez fails to cite to anywhere in the CCPR or MIST that shows bad faith, and Cerf admits that he never fully read the CCPR and MIST program.[73]

### V. CONCLUSION

For the reasons stated above, Allstate's motion for summary judgment at docket 115 is **GRANTED**.

---

71. *Knoell,* 163 F.Supp.2d at 1078 n. 8 (citing *United States v. Scholl,* 166 F.3d 964, 973 (9th Cir.1999)).

72. Where an expert opinion is unsupported by the record, it too is insufficient to over-come summary judgment. *Knoell,* 163 F.Supp.2d at 1078 n. 8 (citing *Reynolds v. County of San Diego,* 84 F.3d 1162, 1169 (9th Cir.1996)).

73. Doc. 126, Ex. 5.